Please be seated. Madam Clerk, please call the case. 310-0833 Westfield National Insurance Company, outlawed by Joseph P. Foster v. State Farm, Fire and Casualty Company, appellant by John Anderson. Mr. Anderson, you may proceed. Good morning, Your Honor. May it please the Court, my name is John Adams. I'm going to be arguing for State Farm, Fire and Casualty Company, the appellant. The issue in this case is whether the UConn that was involved in the accident was available for the regular use of Sean Black. Could you speak up just a bit, sir? Yes. That's not so much an amplification as a recording device. I see. The key person in answering this question is James Black, Sean's father. There's no doubt that the car was essentially given to James Black by the law firm that he worked for, with no strings attached. He could have made it available for Sean's regular use if he wanted to, or he could have reserved it for his own use if he wanted to. The question is, what did he do? And I submit that the record is unclear on that point. It is certainly not clear enough to warrant summary judgment. The trial court and Westfield don't spend a whole lot of time talking about James Black's testimony, and I guess that's understandable because you can't get much from it.  I mean, Sean said that he would have been able to use the car if his father gave him permission. Well, of course he could. It was de facto his father's car. If his father said he could use it, then he could use it. The question is, did his father say he could use it? I mean, it's possible that he asked every day if he could use the UConn, and his father said no every day except maybe once or twice. If that happened, then it would not be available for his regular use. And we just don't know from the record how often he did use it. We only know of one, well, two occasions when he used it for other than business purposes. Once to drive to school for basketball practice during inclement weather, and then at the time of the accident when he did not have permission. We know that he used it occasionally when he was doing odd jobs for the family businesses. We don't know how often that happened. The testimony is unclear on that point, as on a great many points. The testimony is also unclear as to whether he even asked permission. I suspect it was more of not, can I have the car, father? But, Sean, I've got some work for you to do. Let's go and do it. But in any case, whether the car was available for Sean's regular use is a fact. It's a triable issue of fact. It's something that needs to be tried. It's not a summary judgment question. Mr. Adams, it doesn't matter the frequency with which he used it, does it? Isn't the question whether it was available for his use and not whether he actually, how much he actually used it? Yes. It could, in theory, it could be available for his use even if he hardly ever used it. But, again, there's no evidence on that point. All we know is that Sean said in his testimony that he could use it if his father gave him permission. But we don't know how often his father gave him permission. Do we know whether he ever asked permission and was denied it? We don't know that. We don't know whether he asked permission and was granted, except for perhaps that one occasion when he drove to school in the blizzard. And all the times that he used it for work. All the times he used it for work. And, again, it was made available to him during those times. But we don't know how many times that was. They couldn't say. We know it was apparently only during summer vacation when Sean wasn't in school. But how often? There's no way to tell from the testimony. That's going to be a tribal issue, in fact. And, again, the use that Sean made of the car when he was doing odd jobs for the family businesses is not what he was using the car for at the time of the accident. The Morris case, Morris, which is auto owners, the Supreme Court drew that distinction. If it's made available to you, to a person for business use only, and you're not using it for business purposes, then the exclusion doesn't apply. And that's what happened in the Morris case. Morris had a car, a company car that was made available to him solely for business use. He went to play golf, and the Supreme Court said, well, the exclusion doesn't apply then. It only applies when he's using it for business purposes. Here, Sean, according to his testimony, took the car to go fishing. Not a business use. Assuming the car was available to him regularly for business purposes, that still would not trigger the exclusion in this case. Now, there was another issue in the trial court, the issue of whether the Westfields policy is excess over everything else, over the state farm umbrella policy. The trial court ruled in favor of state farm on that question, and Westfield has raised it in its brief. I submit that that issue is not properly before the court because Westfield did not file a notice of cross appeal to appeal that summary judgment. The two issues are unrelated. I mean, one is, does Westfield provide any coverage at all? The other is, assuming they do provide coverage, is it, how does this coverage relate to state farms coverage? The answer to the first question does not in any way depend on the answer to the second. I would therefore submit that the issue is not before this court. Certainly state farm didn't raise that issue in its notice of appeal, and Westfield didn't file a notice of cross appeal. If the court wants to reach that issue, which I don't think it should, Westfield's only argument is that, is an argument based on what's common practice in the insurance industry, and that is that for automobile policies, the owner's policy is primary and the driver's policy is excess, assuming that the driver is not the same person as the owner. That is, I concede that that is a common practice in the insurance industry for automobile policies, but these aren't auto policies. These are umbrella policies. That's a different kind of policy. It's a different animal. If you look at the declarations page on these policies, both state farm and Westfield, there isn't any automobile identified on the declarations page. In contrast with the auto policies, both of those policies are also part of the record. Both of them do identify specific automobiles. That's what makes an auto policy an auto policy. It identifies a particular car or maybe more than one car that it's providing coverage on. An umbrella policy provides coverage to persons. It may protect them from liability resulting from an auto accident, but the protection is afforded to persons, not to cars. And there is no custom in the insurance industry, and there's nothing certainly in the law that says that the owner's umbrella policy is primary and the driver's umbrella policy is excess. I am prepared to rest on my briefs if the court doesn't have any questions. Thank you, counsel. Thank you, Your Honor. I do reserve the right to rebut. You may proceed. Morning, Your Honor. Morning. Justice McDade pointed out the big fallacy in State Farm's argument, which is they depend entirely on what they perceive to be a thin evidentiary record as to how often Sean drove the car. But as Justice McDade indicated, that is a fallacy because the law, which they made, by the way, Ryan v. State Farm is their case and Mr. Adams' case, so he knows very well. As he argued in that case, that availability counts, not actual use. We don't have to show that Sean drove that car often, frequently, or that it was always available to him. We only have to show that it was available for his regular use. So what are the facts that show that? Well, first of all, the car with the Yukon was garaged at the house he lived in every night and all weekend. The keys were kept in a common basket with the other keys to the other family cars. Sean had access to that basket. Ryan was a police car case, though, wasn't he? Yes, he was. But the point is, that's the first reported decision in Illinois that I'm aware of that construed this particular language, furnished or available for your regular use. The auto owner's case that State Farm relies on did not have the word available in the exclusion. And State Farm concedes in its brief that adding the word available broadens the exclusion. So I submit that these facts show that it was available for his regular use, the ones I mentioned. The fact that he was authorized to use it, if nobody else was using it, he just had to ask permission first. Now, they say that, well, the fact that he had to ask permission essentially negates any notion that it was available for his regular use. Because any person can ask any car owner for permission to drive the car, and the car owner can say yes. And to infer from such a circumstance that the car was always available for that person's regular use would be absurd. I agree, it would be absurd. But that's not this case, obviously. This was not any person in any car. This was James Black's car. That's Sean's dad. He lived with him. And the car was kept in the home that they both lived in. So I don't think State Farm's hypothetical is very helpful to the court. Again, the exclusion requires available for regular use, not for perpetual use, not for constant use, not available any time he wanted it. So the fact that there may have been occasions when it wasn't available to him doesn't mean that it wasn't still regularly available. And to answer, I believe it was Justice McDade posed the question, is there any evidence that he ever asked for permission to use the Yukon and was told no? I didn't see any such evidence. I'm not aware of any such evidence. I've read the record pretty carefully. And I don't believe there was any such testimony. Would that negate regular use, though? I don't believe it would because, again, regular use, you can have regular use without having constant use or constant availability. It doesn't have to be available at all times in order to be regularly available. Just to take a pure hypothetical, let's say that the evidence was that James needed the car on Mondays and Tuesdays, but Sean could have it any other day during the week. Well, that's obviously regular use, but it's not always available. It's not always available on Mondays and Tuesdays. So now this point they make that they rely on auto owners for the proposition that if the car is made available for one purpose, such as a business purpose, then use of the car for another purpose, like personal use, somehow doesn't fall within the exclusion. Auto owners, which, frankly, I find is a little bit difficult to understand on that point, auto owners, the holding of auto owners does seem to support that argument because the court hung its hat on the fact that the driver, the employee, did not have permission to use the vehicle for personal use, only for business. Auto owners was really a standard of review case, wasn't it? It wasn't against the manifest way of the evidence. That's a very good point. It was. I looked through the case trying to figure out was there an evidentiary hearing or how exactly did it reach the reviewing courts, and it isn't really clear to me. But I presume it must have been on some sort of an evidentiary hearing. Well, the standard was against manifest way of the evidence, so there must have been a... Right. It must have been some sort of a trial proceeding as opposed to summary judgment. So that's absolutely true. But I think an even bigger distinction between this case and auto owners is that here there's no evidence that James or Sean were restricted to business use of that Yukon. The evidence, in fact, is the opposite. Donald Black, who speaks for the firm that owns the Yukon, testified that there was no restriction that James Black could use the car for business or personal use. And Sean Black testified at page 446 of the record. He was asked, was there any particular... Was there any restriction placed on you in terms of place that you could go with the Yukon? The answer, nothing was said about that. I suppose you could... The question maybe isn't crystal clear, but I take that to mean you could use it for any purpose, that you didn't have to just limit your use of business. In any event, there was certainly no evidence to suggest that he was under any such restriction. So I think that distinguishes this case from auto owners. Now, if I could speak briefly about the other insurance issue. You didn't cross appeal, did you, on that? I did not. So how's that in front of us? Well, the case that he cited, Martis, I think is distinguishable because the party that didn't file the cross appeal had not obtained all of the relief it sought on the trial court. I think that's the key. Did that party obtain all of the relief that it sought on the trial court? If it did, it can raise alternative grounds for affirmance without filing a notice of cross appeal. The court found that the appellant in the Martis case had not obtained all of the relief that it sought on the trial court. Here, Westfield did. Excuse me. It was determined by Judge Marcia that our exclusion applies and we don't owe any coverage. So there's no relief that we sought and did not obtain. And it's true that he ruled against us on the other insurance issue. But that's just, that was just, I guess you could look at it as a summary determination of a major issue rather than the denial of any relief that we sought. Now, because this was only brought up in their reply brief, I didn't have a chance to respond to it in writing. But I would suggest the court review, let me find the citation here, the Martis case. Yes, but also for a general discussion of the idea that whether a notice of cross appeal is necessary turns on whether the party obtained all of the relief it sought. There's a case called Evans versus Lima Lima flight team 373 LF third 407. It's a first district case from 2007. And it cites a case, a Supreme Court case from a little bit earlier. So I think the general rule applies here rather than the situation in the Martis case is distinguishable. And I'll just spend a minute or two briefly talking about the other insurance issue again. And as counsel indicated, the court doesn't need to reach the issue if it affirms the determination on the availability for regular use exclusion. Now, counsel points out that the general rule that the coverage on the car is primary, coverage on the driver driving that car with permission is excess. But that rule doesn't apply to umbrella policies. I don't know any case of any case that squarely addresses that question. But what I would suggest to the court is, regardless of the fact that these are umbrella policies and they do cover risks beyond auto related risks. The fact is that in this case, they function as auto policies. They're excess over auto policies. No question that the Westfield policy was issued to the James Black family and it insured that family's two cars, a Pontiac and a Buick. It did not insure the Yukon. The State Farm policy was issued to the Black and Black law firm that did own the Yukon and the Yukon was listed. So if the court would look at New Amsterdam Casualty versus certain underwriters of Lloyds, a Supreme Court case from 1966, the court does recognize a general rule that the coverage on the car is primary. So. What are we dealing with here? This is a personal liability umbrella policy, right? Yes. It kicks in whether you spill chemical on your lawn and it goes to your neighbors. It kicks in. I don't have anything to do with cars. I'm going to stay with that. Well, auto coverage is one of the coverages and specifically. It's really covering for when you get a judgment in excess, right? Yes. Generally speaking, it has to be a risk that's covered by the underlying primary insurance. I mean, there are certain areas. Could it be homeowners? Yes. Okay. Yes. So it's not necessarily tied into one type of underlying policy. Well, it's only access over homeowners and personal. Right. Right. No, I absolutely agree. The policy is not limited to auto coverage. No question. But what I'm saying is that in this case, it functioned as an access auto policy, which, of course, it often does. Only because the liability emanated from it. From the use of an auto. Okay. Right. So I'm simply suggesting that when the liability that triggers the umbrella policy arises from the use of an auto, I don't see any compelling reason not to treat the policy as an auto policy. We've got a $3 million judgment here. Right. And you've got personal access for $5 million. Right? State Farm. I think State Farm's primary policy was $500,000, and I think their access was $5 million. $5 million. And you owe us for $3 million. So, yeah, I mean, there's the. . . So Westfield shouldn't have to kick in anything under your argument. That's right. Okay. We didn't receive a premium for that UConn. State Farm did. So. . . And in any event, the clear language of our exclusion applies here.  Thank you very much. Thank you. I just want to respond to a few of the points that Mr. Postell made. Mr. Postell says that under the holding of the Ryan case, a car can be available for a person's use even if you never actually used it. And I agree. This is true in the abstract. But what evidence is there that the car was available to Sean Black? The only thing that he cited was the fact that the car was there at his house and the keys were there at his house where he could get his hands on them. So under that rationale, the car would be available to his use even if he didn't have permission, even if he had no permission at all to use it. That can't be what the policy means. Certainly that was not true in Ryan. In Ryan, Ryan not only had permission to use the police car, he was told, this is your car for the day. Going to the Otto Owens v. Morris case, Your Honor is correct that that case involves the standard of review. But in order to reach a decision on the case, the Supreme Court had to construe the policy in the case to determine whether the standard of review, whether the evidence under the appropriate standard of review supported the judgment. And it did construe the policy as I discussed before by finding that the exclusion applied only when the car was being used for business purposes. And when the car was not being used for business purposes, it didn't apply. That involved the construction of the policy, not a review of the evidence and whether the evidence supported the judgment. Was it the finding that the judgment was not against manifestly the evidence in that case? Yes, that was the finding. But the finding depended upon an interpretation of the policy. And if the court had read the policy differently, if they read it as saying that this car was available, that the exclusion applies no matter what the driver is using it for, as long as it's regularly available to him, then I think the result would have been different. Because the court did say, I mean, they did say that it was unquestionably available for his regular use for business purposes. Mr. Ames, do we have any restriction in this case as to the type of use? Is this a personal? The restriction isn't in the policy. And it wasn't in the policy in Auto Owners v. Morris either. That was just the way the court read them. It wasn't there expressly. That's how the court interpreted the policy. But we have evidence in this case that it was for all kinds of use, right? We have evidence that the car, that the law firm made the car available to James Black for all kinds of use. But we have no evidence about what James Black, whether he made the car available to his son, Sean, for all kinds of use or for any use at all. The only evidence that counsel cited was the fact that the car was kept at the Black home and the keys were kept in a basket where Sean could get his hands on them. And then on at least one occasion he was given permission to use it for something personal? Yes, one time. At least one that we know of. Yeah, that's all we know of. And again, it may be that there were other times, but the record doesn't disclose that. And this is simply another reason why this is not a summary judgment case. Well, what about the evidence that he's using this vehicle to go and help handyman jobs for his father? And it has rental properties. Is that evidence? That's evidence. I believe that Justice McDade asked about evidence of personal use of the car. That's evidence that he used it. But again, there's no evidence, no sufficient evidence as to how often that happened. Counselor, you have one minute. Okay. Unless the court has other questions, I'm finished. Thank you. Thank you to the attorneys, and we'll take this case under advisement and rule with dispatch. We'll take a break for a panel change. Thank you. Thank you, Your Honor. Thank you. Thank you. Hello. How are you? Good. Do you move a lot? No. Yeah. How are you? How is your day? I'm doing good. Good to see you. Good to see you. Good to see you. Good to see you. Good to see you. Good to see you. Good to see you. Good to see you. Oh, I just forgot about you. She's wonderful. I know. I like her. Well, she's really nice. She's really nice. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.  Thank you.